IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JANAIR L. BEST,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>　　　　　Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 15-2735 (JBS)<br><br>**OPINION** |

APPEARANCES:

Richard Lowell Frankel, Esq.
Bross & Frankel, P.A.
102 Browning Lane
BLDG C-1
Cherry Hill, NJ 08003
　　Attorney for Plaintiff Janair L. Best

Paul J. Fishman
UNITED STATES ATTORNEY
　　By: Melissa Kay Curry
　　　　Special Assistant U.S. Attorney
Social Security Administration
Office of the General Counsel
300 Spring Garden Street
6th Floor
Philadelphia, PA 19123
　　Attorneys for Defendant Commissioner of Social Security

**SIMANDLE**, Chief Judge:

## I. INTRODUCTION

This matter comes before the Court pursuant to 42 U.S.C. §
405(g) for review of the final decision of the Commissioner of
the Social Security Administration denying Plaintiff Janair L.
Best's application for disability insurance benefits under both

Title II of the Social Security Act, 42 U.S.C. § 401, et seq.,
and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-
1385. Plaintiff, who suffers from dyspnea on exertion, chronic
obstructive pulmonary disease, and bullous emphysema, was denied
benefits for the period beginning August 24, 2009, the alleged
onset date of disability, to September 5, 2013, the date on
which the Administrative Law Judge ("ALJ") issued a written
decision.

Plaintiff argues that the finding of ALJ that Plaintiff is
not disabled is not supported by substantial evidence because he
made three errors at step five of the sequential analysis.
First, Plaintiff contends that the ALJ erred when he did not
present all of Plaintiff's non-exertional limitations to the
Vocational Expert ("VE") at Plaintiff's hearing, and as such the
VE's testimony cannot constitute substantial evidence. Plaintiff
also argues that the ALJ erred when he drew his own conclusions
about the impact of Plaintiffs' non-exertional limitations
without the use of vocational or medical evidence. Finally,
Plaintiff argues that the ALJ misapplied the Commissioner's
burden of proof at stage five, leading to an improper finding
that Plaintiff is not disabled.

For the reasons discussed below, the Court will affirm the
ALJ's decision denying Plaintiff disability benefits.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed an application for disability insurance benefits and supplemental security income on August 22, 2011, alleging an onset of disability on August 24, 2009. (R. at 15.)[1] Both claims were denied, as was a request for reconsideration. (Id.) A hearing was held on May 28, 2013 before the ALJ, Daniel L. Shellhamer, at which Plaintiff appeared and testified with counsel. (Id.) On September 5, 2013, the ALJ denied Plaintiff's appeal at step five of the sequential analysis, finding that Plaintiff was capable of performing jobs that existed in significant numbers in the national economy. (R. at 29.) The Appeals Council denied Plaintiff's request for review. (R. at 1-3.) Plaintiff then timely filed the instant action.

### B. Medical History

The following are facts relevant to the present motion. Plaintiff was 38 years-old as of the date of the Decision with an eleventh grade education, and he had work experience as a warehouse worker and a packing and shipping clerk. Plaintiff checked himself into Our Lady of Lourdes Medical Center on August 24, 2009, where he was treated for bilateral bullous

---

[1] Plaintiff had previously filed for benefits on October 5, 2009. (R. at 197-202.) This claim was denied on December 17, 2009 (R. at 70) and on Reconsideration on May 6, 2010. (R. at 72.)

3

disease and pneumonia in his upper right lobe. (R. at 342-45.)
When it became clear that he was not responding to antibiotics
and would need more specialized pulmonary care, he was
transferred to Our Lady of Lourdes Hospital on August 29, 2009
for treatment with Dr. Baumgarten. (R. at 345, 376-77.)
Plaintiff underwent drainage of lung abscesses and placement of
a drainage catheter, and was diagnosed with bullous disease with
extensive pneumonia and symptoms suggestive of possible
emphysema. (R. at 435.) Plaintiff was discharged from the
hospital on September 16, 2009, with resolved chest discomfort
and cough and only mild decreased breath sounds and diagnoses of
right lung abscess, status post percutaneous drainage of the
right lunch abscess, bullous disease, leukocytosis, elevated
LFTs, and elevated amylase and lipase. (R. at 435-56.) Plaintiff
underwent a series of follow-up examinations with Dr. Derivaux,
where the doctor found his condition a "significant improvement"
and prescribed further antibiotics. (R. at 435, 478.) A
pulmonary function test on November 18, 2009 performed by Dr.
Nugent revealed restricted lung capacity that "may be effort
related" and that was likely not "a concomitant second disorder
other than his COPD." (R. at 437.) Dr. Derivaux noted in January
2010 that Plaintiff would not need surgery and would only be
seen on an as-needed basis. (R. at 476.)

On December 14, 2009, Dr. Schneider performed a Physical Residual Functional Capacity Assessment as a SSA Medical Consultant. Dr. Schneider listed Plaintiff's primary diagnosis as bullous disease and concluded that "[t]he symptoms of [shortness of breath], cough, hemoptysis, weakness" are attributable to his bullous disease. (R. at 446.) His report noted that Plaintiff had difficulty with heavy lifting and recommended that Plaintiff avoid, mostly or entirely, climbing on ramps, stairs, ladders, ropes, scaffolds; balancing; stooping; kneeling; crouching; crawling; extreme temperatures; wetness and humidity; vibration; fumes, odors, dusts, gases, poor ventilation and hazards. (R. at 442-45.) A following SSA Development Summary Worksheet concluded that Plaintiff should be limited to sedentary work (R. at 450) but that jobs existed that he could perform given his physical and environmental limitations. (R. at 450.)[2]

Plaintiff sought medical treatment for chest pain, tightness, and/or shortness of breath at least five times over the following year: in January 2011 with Dr. Derivaux (R. at 474-483), at Virtua Health Hospital on August 24, 2011 (R. at 458-473), again on September 9, 2011 with Dr. Derivaux (R. at

---

[2] At this point, the SSA denied Plaintiff's initial application for disability benefits, finding him not disabled. (R. at 450.)

474-483), and on September 20, 2011 with Dr. Francke. (R. at 487-491.) Plaintiff's coarse breath sounds appear to have improved over this time period. (R. at 26.) Dr. Derivaux noted that he did "not see any continued surgical issues" and that Plaintiff's chest x-rays were "really unchanged since the last one done at Lourdes" in September 2009. (R. at 474.) Plaintiff's other vital signs at these examinations were within normal limits. (R. at 462, 468-71, 474, 487-92.)

In early December 2011, Dr. Klausman performed a consultative examination at the SSA's request and diagnosed Plaintiff with COPD. (R. at 496.) Plaintiff underwent a CT scan (R. at 492-93) and pulmonary function test (R. at 494-503), neither of which revealed significant changes from his late 2009 and January 2010 testing. (R. at 23, 492.)

After the May 28, 2013 hearing before the ALJ, Plaintiff underwent an additional consultative examination with Dr. Wahl at the SSA's request in July 2013. (R. at 559-71.) Dr. Wahl diagnosed Plaintiff with COPD, bullous emphysema, and dyspnea on exertion. (R. at 560.) Dr. Wahl noted that Plaintiff was not short of breath during his exam and did not need oxygen, and that most of his vital signs were normal. (Id.) Dr. Wahl's medical source statement largely comported with Dr. Schneider's assessment of Plaintiff's capabilities. (Id.) He noted that

Plaintiff should be "limited" on stairs and ramps, "should avoid environments with dust and respiratory irritants," and "should only occasionally" be exposed to humidity and wetness. (R. at 560-61.)

**C. ALJ Decision**

In a written decision dated September 5, 2013, the ALJ determined that Plaintiff was not disabled at any time through the date of decision. (R. at 30.) He found that Plaintiff had not engaged in substantial gainful activity since August 24, 2009, the alleged onset date of his disability. (R. at 17.) The ALJ further determined that Plaintiff suffered from the following "severe impairments: dyspnea on exertion, chronic obstructive pulmonary disease ("COPD") and bullous emphysema." (Id.) Notwithstanding Plaintiff's severe impairments, the ALJ concluded that Plaintiff's impairments did not meet, or equal in severity, any impairment found in the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ further determined that Plaintiff possessed the residual functional capacity ("RFC") to perform sedentary work,

> except that he must avoid stair climbing and climbing ladders, ropes and scaffolds, avoid temperature extremes, humidity, wetness, dust, gases or other environmental irritants, and understand and remember simple, routine instructions, carry out repetitive tasks, and make simple work related decisions using common sense but only dealing with minor or a few changes in a routine work setting.

7

(R. at 19.) The ALJ concluded that Plaintiff was unable to perform his past relevant work as a warehouse worker and packing and shipping clerk because both were classified as "medium" exertional work in the Dictionary of Occupational Titles ("DOT"). (R. at 28.) Nonetheless, the ALJ concluded that, given Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy" that Plaintiff can perform, including the representative job of "sorter (DOT code 521.687-086)." (R. at 29.)

In support of his conclusion, the ALJ evaluated, among other factors, Plaintiff's testimony and other statements regarding his ability to engage in daily activities; the observations of his treating physicians; his use of medications; the intensity, persistence, and limiting effects of symptoms associated with his medical conditions; the testimony of Louis Szollosy, a vocational expert ("VE"); and the DOT. (R. at 21-29.) Specifically, the ALJ found that "a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the claimant" (R. at 24) with respect to Plaintiff's alleged headaches and difficulty paying attention or concentrating. (R. at 25.) Instead, the ALJ found

8

that, while Plaintiff may experience some pain and discomfort
from his respiratory ailments, his "functional abilities are not
consistent with disabling levels of pain" and determined that
Plaintiff "is able to understand and remember simple, routine
instructions, carry out repetitive tasks, and make simple work
related decisions using common sense but only dealing with minor
or a few changes in a routine work setting," (R. at 25) matching
SSR-96-9p's requirements of the mental ability required to work
at any exertional level. (R. at 24.)

Moreover, with respect to Plaintiff's non-exertional
limitations, the ALJ noted Plaintiff's self-reported ability to
lift ten pounds and help with basic household chores and his
difficulty lifting, walking, and stair climbing (R. at 25). The
ALJ noted that, with only one exception, Plaintiff's medical
records indicated that his "respiratory impairments did not
exceed moderate findings . . . which does not support a finding
of disability and does support the remainder of the limitations
assigned in the State agency medical consultant [Dr.
Schneider]'s opinion." (R. at 27, 441-48.) At the time of the
hearing, consistent with Dr. Schneider's report and
recommendations (R. at 443, 445), the ALJ considered that
Plaintiff would need to avoid "stair climbing, must avoid
temperature extremes, must avoid dust, gases, or generally other

environmental irritants" as part of his non-exertional RFC (R. at 29, 64). When he sought testimony from a VE at the hearing regarding the impact on potential employment of Plaintiff's non-exertional limitations, the VE responded that given those restrictions, Plaintiff could perform the job of "sorter . . . and that DOT number is 521.687-086." (R. at 65.)

Ultimately in his written decision, and taking into account Plaintiff's post-hearing consultation with Dr. Wahl, the ALJ concluded that Plaintiff's non-exertional RFC would additionally include avoiding ladders, ropes, scaffolds, humidity, and wetness. (R. at 29, 560-61, 569.) The ALJ noted in his decision that "although the vocational expert did not consider the additional limitations in the claimant's residual functional capacity as assigned" by Dr. Wahl on July 9, 2013, "the DOT reveals that neither of those functional activities are required to perform the job of sorter." (R. at 29.) As a result, the ALJ concluded that "based upon the DOT, the claimant could perform the job of sorter even with the additional limitations." (R. at 29.) Therefore, the ALJ determined that Plaintiff could perform work existing in significant numbers within the national economy, and found Plaintiff "not disabled." (R. at 29.)

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Court's review is deferential to the Commissioner's decision, and the Court must uphold the Commissioner's factual findings where they are supported by "substantial evidence." 42 U.S.C. § 405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 114 (3d Cir. 2012). Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 400 (1971); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (using the same language as Richardson). Therefore, if the ALJ's findings of fact are supported by substantial evidence, the reviewing court is bound by those findings, whether or not it would have made the same determination. Fargnoli, 247 F.3d at 38. The Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Remand is not required where it would not affect the outcome of the case. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

## IV. DISCUSSION

Plaintiff argues that the ALJ erred when he did not present all of Plaintiff's non-exertional limitations to the Vocational Expert ("VE") at Plaintiff's hearing, rendering useless the VE's opinion that Plaintiff could hold the job of nut sorter. Plaintiff also argues that the ALJ erred when he drew his own conclusions about the impact of Plaintiffs' non-exertional limitations without vocational or medical evidence. Finally, Plaintiff asserts that the ALJ misapplied the Commissioner's burden of proof at stage five, leading to an improper finding that Plaintiff is not disabled.

### A. Legal standard for determination of disability

In order to establish a disability for the purpose of disability insurance benefits, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Plummer v. Apfel, 186 F.3d 422, 426 (3d Cir. 1999); 42 U.S.C. § 423(d)(1). A claimant lacks the ability to engage in any substantial activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy." Plummer, 186 F.3d at 427–428; 42 U.S.C. § 423(d)(2)(A).

The Commissioner reviews claims of disability in accordance with the sequential five-step process set forth in 20 C.F.R. § 404.1520. In step one, the Commissioner determines whether the claimant currently engages in "substantial gainful activity." 20 C.F.R. § 1520(b). Present engagement in substantial activity precludes an award of disability benefits. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). In step two, the claimant must demonstrate that the claimant suffers from a "severe impairment." 20 C.F.R. § 1520(c). Impairments lacking sufficient severity render the claimant ineligible for disability benefits. See Plummer, 186 F.3d at 428. Step three requires the Commissioner to compare medical evidence of the claimant's impairment to the list of impairments presumptively severe enough to preclude any gainful activity. 20 C.F.R. § 1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Plummer, 186 F.3d at 428. Step four requires the ALJ to consider whether the claimant retains the ability to perform past relevant work. 20 C.F.R. § 1520(e). If the claimant's impairments render the claimant unable to return to the claimant's prior occupation, the ALJ will consider whether the

13

claimant possesses the capability to perform other work existing in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 1520(g); 20 C.F.R. 404.1560(c).

**B. The ALJ did not commit harmful error when he posed an incomplete hypothetical to the VE**

Initially, Plaintiff argues that the VE's testimony did not provide substantial evidence for the ALJ's determination that Plaintiff is not disabled at step five of the sequential analysis because the ALJ's questioning of the VE was deficient. (See Pl. Br. at 16-20.) Specifically, Plaintiff argues that the hypothetical question posed by the ALJ regarding Plaintiff's RFC improperly failed to incorporate all of Plaintiff's non-exertional limitations, and therefore, cannot be considered adequate evidence to support the ALJ's conclusion that alternative employment exists that Plaintiff can perform notwithstanding his limitations. Defendant takes the position that the ALJ's decision should be upheld because Plaintiff's ability to perform the employment identified by the VE is not precluded by the additional limitations. (See Def. Br. at 4-5.) For the reasons that follow, the Court finds no reversible error in the ALJ's treatment of the vocational testimony.

It is undisputed that the ALJ's written formulation of Plaintiff's RFC includes non-exertional limitations that the VE

14

did not consider at the hearing. Plaintiff is correct that the Third Circuit has held that "the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [hypothetical] question accurately portrays the claimant's individual physical and mental impairments." Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (citing Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)). "A hypothetical question posed to a vocational expert must reflect all of a claimant's impairments," especially where "medically undisputed evidence of specific impairments" exists. Id. Clearly then, the VE's testimony in response to an incomplete hypothetical taken alone falls short of providing substantial evidence for the ALJ's conclusion.

However, because Plaintiff's complete RFC, as formulated by the ALJ and unchallenged by Plaintiff, is plainly consistent with the DOT's formulation of the job of nut sorter, see DOT 521.687-086, 1991 WL 674226, the ALJ committed only a harmless error. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009); see also McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (applying Sanders to social security proceedings); Lippincott v.

15

Comm'r of Social Sec., 982 F. Supp. 2d 358, 380-81 (D.N.J. 2013) (same). The presumption that a particular error is per se harmful is at odds with the rule that it is the claimant's burden to show prejudice from an agency decision. See Sanders, 556 U.S. at 407 ("We have previously warned against courts' determining whether an error is harmless through the use of mandatory presumptions and rigid rules rather than case-specific application of judgment, based upon examination of the record.").

Here, Plaintiff has failed to show how the ALJ's error would have changed the outcome of the case. Plaintiff contends that the VE might have offered different testimony about the jobs Plaintiff can perform if he had been presented with a hypothetical that encompassed all of Plaintiff's environmental limitations, because "Vocational Experts often disagree with, or offer testimony, which contradicts the Dictionary of Occupational Titles." (Pl. Reply at 3.) But the VE did not disagree with the DOT the first time around, and it is pure speculation for Plaintiff to assume that the VE would have testified differently if provided with additional information about Plaintiff's limitations when that additional information is explicitly consistent with the DOT.

Plaintiff relies principally on Burns and Podedworny for the proposition that any defective questioning of the VE is a per se harmful error, ignoring Sanders's directive that prejudice from an agency's decision must be shown. In both cases, the Third Circuit found reversible error from deficient hypothetical questions posed to a VE, but both times, the limitations described in the ALJs' hypotheticals left out claimants' significant medical conditions. See Burns, 312 F.3d at 123 (ALJ failed to pose a hypothetical that included any of claimant's intellectual limitations); Podedworny, 745 F.2d at 218 (hypothetical posed by ALJ left out claimant's dizziness and blurred vision, symptoms which "could seriously affect appellant's ability to engage in alternative employment."). Employing a "case-specific application of judgment," as Sanders requires this Court to do, this Court finds that the limitations excluded from the ALJ's original hypothetical here would not likely have changed the VE's testimony the way the defective questions in Burns and Podedworny clearly would have. Remand is not required where it would not affect the outcome of the case. Rutherford, 399 F.3d at 553. Accordingly, this Court rejects Plaintiff's first argument.

**C. The ALJ did not form his own conclusion**

Next, Plaintiff seeks remand on the grounds that the ALJ improperly drew his own conclusion that Plaintiff is not disabled, without relying on medical and vocational evidence. (Pl. Br. at 20-21.) Plaintiff argues that the ALJ "implicitly rejected" the VE's testimony in coming to his conclusion about the impact of Plaintiff's non-exertional limitations and relied only on the medical-vocational guidelines (or "grids"), and that therefore the ALJ's determination is in violation of AR-01-1(3) and the Third Circuit's holding in Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000). This ruling prohibits an ALJ from relying solely on the grids where a claimant suffers from non-exertional limitations and requires the ALJ to either take additional vocational evidence or provide the claimant with notice that he is taking official notice of the grids and provide an opportunity to respond. AR-01-1(3), 2001 WL 65745; Sykes, 228 F.3d at 261. That vocational evidence can consist of "testimony from a vocational expert, reference to the Dictionary of Occupational Titles (DOT) or other similar evidence." AR-01-1(3). This ruling applies even where the ALJ believes that "the limitation does not significantly diminish the range of work that could otherwise be exertionally possible." Sykes, 228 F.3d at 266.

18

Defendant argues in opposition that the ALJ complied with AR-01-1(3), and that he properly relied on vocational evidence from the VE's testimony and the DOT in coming to his conclusion. (Def. Br. at 6-7.) Defendant is correct. The ALJ carefully documented the grounds for his conclusion in his decision, and it is clear that he that he did not rely solely on the grids in making his determination. (R. at 29.) "[T]he Administrative Law Judge asked the vocational expert" questions "to determine the extent to which [Plaintiff's non-exertional] limitations erode the unskilled occupational base" and compared the VE's testimony with DOT definition code 521.687-086 for nut sorter. (R. at 29.) Nothing about the ALJ's decision could be plausibly read to "implicitly reject" the VE's testimony, but more importantly, even if he had, the ALJ still relied on the DOT in coming to his conclusion. Thus the ALJ plainly took, and relied upon, vocational evidence from multiple sources consistent with the requirements of AR-01-1(3), and committed no error. For this reason, the Court rejects Plaintiff's second argument.

### D. The ALJ did not misstate the burden on Commissioner at step five of the sequential analysis

Finally, Plaintiff contends that remand is required because the ALJ erred by misstating the Commissioner's burden at step five of the sequential analysis. (Pl. Br. at 21-23.) Defendant opposes, taking the position that the ALJ properly phrased the

burden. (Def. Br. at 7-8.) For the following reasons, the Court finds no error in the ALJ's discussion of the Commissioner's burden at step five.

As discussed above, the Commissioner reviews claims of disability in accordance with the sequential five-step process set forth in 20 C.F.R. § 404.1520. The claimant bears the burden for steps one through four of the analysis to prove that he is disabled; the burden then shifts to the Commissioner at step five to prove that the claimant can perform work available in the national economy. Bowen v. Yuckert, 482 U.S. 137, 146 n 5 (1987); Sykes, 228 F.3d at 263; 68-FR 51153-01.

Plaintiff argues that the ALJ erred when he described the burden of proof at step five as follows: "Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration." (R. at 17.) Plaintiff contends that by calling it "limited," the ALJ "misstated the importance of the Commissioner's burden" and found that Plaintiff is not disabled based on too thin evidence. Whatever semantics Plaintiff wants to read into "limited,"[3]

---

[3] It is well-settled that the Commissioner's burden is "limited" in the sense that he bears the burden of proof at only one step of a five step analysis, and that the claimant continues to bear the ultimate burden of proving his disability. 20 C.F.R. §§ 404.1512, 416.912 ("In general, you have to prove that you are .

Plaintiff's argument fails because the following sentence of the ALJ's opinion accurately conveys the Commissioner's burden: "In order to support a finding that an individual is not disabled at this step, the Social Security Administration is <u>responsible for providing evidence that demonstrates that other work exists</u> . . . ." (R. at 17, emphasis added.)

Plaintiff argues in the alternative that Defendant failed to meet that burden even if the ALJ properly stated it, because the VE's testimony does not provide substantial evidence for the ALJ's determination, and because the ALJ came to his conclusion independently without the aid of vocational testimony. The Court has already rejected both of those arguments. Furthermore, by finding that Plaintiff can perform the job of nut sorter, which exists with 5,000 jobs in the regional economy and 400,000 jobs in the national economy, the Defendant adequately met the burden of proving that other work exists that Plaintiff is capable of performing. As a result, the Court finds no error in the ALJ's determination.

---

. . . disabled"); 68 FR 51153-01 ("Although you generally bear the burden of proving disability throughout the sequential evaluation process, there is a limited shift in the burden of proof to us only if the sequential evaluation process proceeds to the fifth step. . .  As required by the Act, the ultimate burden of persuasion to prove disability, however, remains with you.").

**V. Conclusion**

For the foregoing reasons, the Court finds that the ALJ committed no reversible errors in determining that Plaintiff is not disabled. As a result, the ALJ's decision will be affirmed. An accompanying Order will be entered.


__December 7, 2015__                    __s/ Jerome B. Simandle__
Date                                      JEROME B. SIMANDLE
                                          Chief U.S. District Judge

22